May it please the court, I'm Michael Hanson, Assistant Federal Public Defender, appearing on behalf of Lawrence Hawkghost, the appellant in this matter. Judge, this is a case for the court to interpret Federal Rule of Evidence 412B1C, and I'd first like to say that 412, which of course excludes evidence of other sexual behavior on a victim in a sexual assault case, subsection B gives a couple of exclusions to that. B1 is evidence of other physical evidence, where there's physical evidence, but we're focused on C, which is exclusion would violate the defendant's constitutional rights. Now 412 is not sacrosanct. There are exclusions. I mean, we have 413, and then we have 412B1C to talk about the defendant's constitutional rights. 412 is not an impermeable shield to allow a victim to perjure herself, as she did in this case. The evidence in this case was necessary. It's different from the other court, this court's opinions in Pumpkin Seed, Never Misses a Shot, and Tail, because this evidence was highly probative. This evidence was necessary not to prove that someone other than my client assaulted the victim back in 2014. So, first you have to look at the timeline in this case. The allegations against my client allegedly, according to the victim, allegedly happened in January of 2014. She doesn't disclose these allegations until December 10th of 2015 to the FBI and to a  And that was just with respect to the first allegation in the indictment, what I call the bathroom incident. My client's indicted and pled not guilty on September 21st, 2016, which again, we're talking 10 months after the initial allegation. While he's preparing for trial, getting ready to try that sole count of the indictment on October 17th, 2016 is when we have this second Child Advocacy Center interview with the victim where she puts on more specific, more severe allegations against my client, which turned into a superseding indictment and counts 2, 3, and 4. That wasn't in October, that was November 9th of 2016, is the second Child Advocacy Center interview on November 9th of 2016. Now unbeknownst at that time, we didn't know until right before the trial, which occurred in May, it was late April of last year, that we found out that at the time she gave this interview in November of 2016, she was being abused by someone else, a man named Jerome Sheridan who was eventually accused, convicted, and is now in federal prison for what he did to the victim in this case. That interview took place on March 20th of 2017. So that's the timeline. The allegations against my client are in January of 2014, not disclosed at all until December of 2015. The more specific, more severe allegations were in November of 2016. And again... So counsel, what was it you wanted to ask that you didn't get to ask? Because you were able to cross-examine, and you were able to make your case, make your defense, but what was missing from your defense that you're seeking to have a new trial over? In my cross-examination of the victim, I asked her, on that second interview on November 9th, 2016, did you answer all her questions truthfully? And this is after she admitted not telling the truth during her first interview in December of 2015. So I asked her, did you answer all her questions truthfully? And she said yes. Then I asked for a sidebar, and I said, Judge, she just lied. There are two questions that she didn't answer, or two questions that she lied about, the last two questions of that interview. One, are there other... So I'm now projecting myself into the last two questions of that second interview. Was there anybody else touching you inappropriately at this time? Is there anybody else touching you inappropriately? Answer no. Last question, anything else we should be talking about here in this setting? Meaning anything else going wrong in your life? Answer no. And she lied about that, because fast forward four months later, she's talking contemporaneous with that interview, that she's being molested by her uncle. So I wanted to get into, with the victim, that she lied about that. And I started to. I asked her the question, this is on page 84 and 85 of the transcript. Wasn't the judge concerned that you would then get into Sheridan and... I was trying to get... ...by him. Yes. I was trying to get in that she lied during that second interview, without just admitting that she lied. I mean, I was respecting the court's opinion. And I... How could you get into... How could you get that without... If you look at the... Without getting into the other abuse. As it stood, I had nothing to impeach her credibility, because I was handcuffed. I had nothing to impeach her credibility on that November 16th statement. If I could have at least gotten her to admit that she didn't tell the truth to that last question. But wouldn't the government then have to ask her to explain why she didn't tell the truth? I mean... That's up to the... Wouldn't it... Well, I know it's up to the government, but wasn't the judge concerned that this would then open up the whole topic of the other abuse? That's exactly what he was concerned about. But my point was, I was trying to get into the fact that she lied and leave the nature of the lie alone, as collateral, if you will. But he wouldn't let me do that. And on page... The top of page 80... Were you willing to ask, did you lie about something that's unrelated to this defendant? Wasn't given that opportunity. The objection was sustained, and I had to move on. We had litigated that at sidebar. You're arguing that this could not have come in under Rule 412, right? I'm saying it should have come in. The allegations of abuse about Mr. Sheridan should have come in. Well... And it didn't happen. What about... As I read the record, the judge said that this is inadmissible under both 412 and 403. And so, you're not damaged by 412 evidence, you're damaged by 403 evidence, am I right? I've assigned both. I've assigned two assignments of error under 412 and 403. And it was inadmissible under 403. Right. I believe that the judge misapplied the meaningful balancing test that needs to take place. This is so different than the evidence in Never Misses a Shot. So different than Pumpkin Seed. So different than Tail. Because it's highly probative. And let's not shy away from talking about the fact that it's uncontroverted. No one's arguing that Jerome Sheridan didn't do anything wrong. He did, and he's in prison for it now. So the judge, on both ends of the 403 analysis... This was highly probative, that the victim was just covering up this allegation of abuse to potentially project it onto my client so she wouldn't have to talk about what Jerome Sheridan was doing to her. Or at worst, she's just flat out lying. And saying, Mr. Hot Ghost did this three years ago, nothing's going wrong with me right now. Even though she was being abused by Jerome Sheridan. So that's...  And why do you think that's particularly probative, aside from your projection theory? Or is that the whole argument? When the government plays the card at closing, that this is a typical, delayed disclosure case, I have nothing to counteract that. This isn't a delayed disclosure case. This is a cover-up case with respect to counts two and three. Or at best, it's a projection or a deflection. That she unconsciously pointed the finger back at my client, who she'd already accused. It wasn't hard for her to say, yeah, Larry Hot Ghost is molesting me, because she'd already accused him, he had already pled not guilty, and was preparing for trial. So when she played the card that this is a typical, delayed disclosure case, that makes this... What do you mean by cover-up case? What do you mean by cover-up case? Cover-up, that she's covering up the abuse from Sheridan intentionally. In other words, she knew Sheridan was molesting her. And how is that particularly relevant to whether your client was guilty of some untoward and sanctionable activity? Again, with respect to the more severe allegations in that second interview, it shows an alternative theory of defense. That someone else, other than my client, was harming the victim. And that your client didn't harm her. Correct. Correct. And I wasn't able to argue that. That she was lying about your client. Lying, or as the child advocacy center expert testified, there's an unintentional psychological trick we can play called projection. It's unintentional. Not even knowing we're doing it. I'm just projecting it onto somebody else. Somebody she's already... Your theory was, you wanted her to admit that she had accused Sheridan, or that Sheridan was abusing her. I wanted to... Several things. That's true. I also wanted to admit that she lied during that second interview. She was a slut, and so she's in here lying about this. Is that right? I wouldn't call a teenage victim of sexual abuse that word at all. I know you wouldn't call, but you would animate it with that kind of... No, Judge. Because I offered to the trial court a different way that I wouldn't even have to necessarily talk to her about the instances. I could have asked the child abuse... The child advocacy center examiner about this incident, about what was going on actually in October and November of 2016. I could have asked Special Agent Jeff Howard about that. He took her statements as well. I didn't have to talk to the victim about this, other than the fact that she lied. I wanted to talk to her about those lies, but the specifics of the allegations, which are contemporaneous and similar in nature, could have been handled another way. We offered to do that, but the judge just shut us down. I'm asking that you reverse and remand this matter so that we can retry it, and we can, again, give my client the ability to effectively confront the witness that accused him, and a manner that protects her in a less onerous way than saying what was actually going on directly to her. And you're arguing that this evidence is admissible under Rule 403? Yes, because of the balancing test. This meaningful balancing test, it's highly probative, and it can be brought in in a way that isn't so onerous on the victim. And that's why we have... What would it be probative of? That there's an alternative theory as to why she's pointing the finger on these new allegations back to Mr. Hot Ghost in 2014. But doesn't she then... Well, let's see. It was four months later when she first accused Sheridan? Yes, March of 2017. How does that fit with your projection theory? Why would she be accusing Sheridan? Well, because Sheridan did that. And it's up to the jury to determine whether both individuals did it. I wasn't able to argue anything, and that violated my client's constitutional rights. I wasn't able to address it at all, this highly probative, uncontroverted evidence. And that violated his right to a fair trial. I should have been able to ask that question on page 85 of the transcript. That was an improper sustaining of an objection. Which one, sir? What's page 85? That's my question. In fact, there were other things going on, weren't there? Objection sustained. Again, I could have gotten into the... That question right there is reversible error, in my opinion, just because I wasn't able to effectively cross-examine her with respect to that. And I could have gotten into the fact that she lied, no matter what her answer would have been, without discussing the nature of the allegations. So because she lets these other people do this, my client didn't do it, but it was... What would you say it kind of transferred back to her, and this was a good answer to give at this time, or disclose that this had been done improperly, or didn't happen, or whatever? It's an alternative theory of the defense to combat the government saying this is a typical delayed disclosure case. Either she's intentionally covering up the abuse by Sheridan, or she's just projecting it back to Hot Ghost, who she's already accused. Counsel, you're in your rebuttal. You can reserve, if you'd like. Thank you, Judge. Ms. Eldridge? Thank you, Your Honor. May it please the Court. My name is Erin Eldridge, and I am here on behalf of the United States. I'd like to start off by addressing the argument that the government proffered this as a typical delayed disclosure case. The argument, in closing, at page 234 of the transcript, I'm quoted saying, speaking of the CAC interviewer, and she told you that it's typical, not unusual, majority of her cases for children not to disclose right away, and to not necessarily disclose everything that happened right away. There was no direct connection of any of the experiences of forensic interviewer Skarman to the facts of this case, which goes essentially to the heart of the argument here, which deals with what was alleged at the trial court level to be behavioral manifestations of abuse. Here, it's characterized as trauma and projecting. Essentially, what's happening here is that the defendant has disguised what is a thinly-veiled attack on credibility, an attempt to impeach as a constitutional argument, and that is not meritorious. This court has ruled on a number of occasions that impeachment is not an exception to Rule 412, and the district court got it right here in considering all of the policy considerations of 412 with respect to A.W., who was in the sixth grade, 12 to 13 years old, at the time that she was sexually assaulted by her step-grandfather, Lawrence Hawk Ghost. Now, the argument here is that the evidence was constitutionally required to be admitted under 412b1c. There is no exception that applies here. This constitutional right of confrontation and to present a defense that the defendant relies on, it's not without limitation, and that's pumpkin seed and the other cases that I've cited in my brief. And the limitations, those proper limitations, include concerns about harassment, prejudice, and interrogation that's only marginally relevant, and that, again, is pumpkin seed. What are the concerns here for this specific victim? Well, for starters, bringing forth testimony with respect to other abuse that she has suffered, which is specifically what Rule 412 was designed to prohibit. Yes, in this case, there was another federal indictment to, in fact, brought against other individuals who had sexually assaulted A.W., but 412 specifically prohibits evidence offered to prove that a victim engaged in other sexual behavior. Sexual assaults are included in that sexual behavior. The argument is that it's not offered for that purpose, that there's this constitutional exception to get it in, but it's not probative of anything other than potentially another ground for impeachment with respect to the defense offered. And the defendant did have the opportunity to present that defense, a complete defense. The defense at trial was that the victim had a motive to fabricate these allegations, and that defense was advanced. The defendant testified about how the children were coming over to the home and using the water, and the argument by the defense on close was she just wanted to get access to the house, and so she fabricated these allegations. That defense was advanced. He also had a thorough opportunity to impeach the victim, and that's set forth at pages 74 to 75 of the transcript. Now, this argument about perjury directly relates to essentially what is an attempt to impeach, and further impeach a victim whom defense counsel had a full opportunity to impeach. What do you mean by full opportunity? I mean, if he was precluded from showing that she lied in the interview, then it wasn't full. It was something less than full, and you must be arguing that something less than full was adequate. But what do you mean by full? He had the opportunity to impeach her credibility with respect to the accuracy of her disclosures. At page 74, he challenged her truthfulness. He challenged her credibility. He called her a liar, essentially. The questioning was, at that first interview on December 10th, you were told there was one rule. What was the rule? Tell the truth. But you told her, with respect to the bathroom incident, that's the only thing. That's only it. Do you recall that? Yes. That wasn't truthful, was it? No. You broke the one rule that she had for you in that interview, didn't you? Yeah. And then he goes on to ask about other lies to other individuals. But I assume what he wants to do then is come back, OK, then in the next interview, you implicated my guy with these other accusations. But you were still lying in that interview. Correct, Your Honor. I think that all of these questions go to the allegations against Hawk Ghost. She's asked, that was a lie. You told the investigator that was it, meaning only that bathroom incident had occurred. And that was a lie, right? Yes. And then you told the CAC interviewer that that was it. That was a lie. Yes. And then the follow-up question is on page 75. Now let's fast forward 11 months to November 9, 2016. You had a second interview at the Child Advocacy Center in Sioux City, this time with Amy Scarman. Do you recall that? Yes. And you talked to her about other incidents that you've told the jury today involving Mr. Hawk Ghost, correct? Yes. And this is the question that Mr. Hawk Ghost claims is perjury. But this time, you told her, did you tell her the complete truth about every question she asked of you? Yes. And then he goes on to say, you didn't lie to her about any question that she asked of you. No. Now in that context, the victim is focused on all of the allegations against Mr. Hawk Ghost. She's been asked pages of questions about the initial disclosure about Mr. Hawk Ghost, and then goes on with this follow-up question about the next interview, at which point she did disclose fully the allegations against Mr. Hawk Ghost. So any argument about perjury is tenuous at best when the whole line of questioning was directed at the victim with respect to her revelations of abuse specifically geared toward Hawk Ghost. Now, I don't understand that argument. I mean, it wasn't the whole line of questioning, because the last question, or the penultimate question, was, was there any other abuse? The question was, as he read it to us, it was an open-ended question about whether anyone, I forget if it was anyone else, or just was there any other abuse, but it was certainly something that would have encompassed Sheridan. And I believe that the specific question is outside the record. However, the CAC interviewer typically closes with, were there any other touches, or have you experienced any other bad touches? And even though the government acknowledges that she did not disclose at that point in time, the argument made at trial was, she denied having other problems, or there being any other issues she thought she should raise with the CAC interviewer. That is extremely general. That doesn't specifically go to Sheridan, or any other abuse that was occurring. So the argument is a stretch at best. When a victim, when faced with the question, are you having any other problems, or is there anything else that I should know about, answers in the negative, it cannot be said conclusively that she's perjuring herself. Was the other touches question raised? I don't believe, and again, I have to refer back to what is outside the record, which is the CAC interview recording itself. I believe the touches question was At which point, she denied other touches. And that was explored by counsel at trial. You lied in December 2015, when you said it was the only occurrence. Yes, I lied. And that went on. So that is what I mean, Your Honor, with respect to a full opportunity to impeach. But in the second interview, when she added the new allegations against Hot Ghost, was she also asked then, were there other touches, and said no? And again, I don't believe it's in the record, but I don't believe it was phrased like that, Your Honor. I believe the argument before the trial court was, were you having any other problems, and is there anything else that's important for me to know about. Phrases to that effect, and I'm paraphrasing, Your Honor. But I don't believe that at that particular interview that that followed. The two of you are reciting it differently, then. I guess we'll have to go. Yes, and Your Honor, I do think. Suppose for the sake of argument that he was prevented from asking whether she lied about other touches. Yes. Why shouldn't he have been allowed to ask about that, if she did lie about that? Even if that were the case, Your Honor, I believe it's still an impermissible line of questioning. And that goes to the case law that's already out there from this court. Never Misses a Shot is essentially a case that has the same facts with respect to the argument that was proffered. The defendant argued, I should be to ask about other abuse by another perpetrator, because the argument was that the victim was projecting, or could possibly be projecting, the abuse onto the defendant in that case, instead of the other perpetrator. And this court said, no. This court said that A, essentially, we're dealing with this thinly veiled attempt to impeach. And the confrontation argument was rejected multiple times. As well as this projection argument. Again, this projection argument has no basis in fact, and no evidentiary support. The district court found that there was very low probative value of that particular argument, based on the record in front of it. But the record was no different at trial. The only thing that came out at trial that was above and beyond the limited record offered at the motion limine hearing, was that the forensic interviewer said that yes, it's possible that children can project as a form of one of the coping mechanisms dealing with trauma and abuse. However, when asked specifically if she had ever experienced a situation where a child had wrongfully projected abuse onto another perpetrator, she said something to the effect of, I can't answer that. I don't know. I don't have any experience with that, because she focuses on interviewing children in a very limited period of time. So the record itself doesn't even support this additional projection argument. Counsel, you have concentrated on 402 evidence, but the judge had a second ruling, and that was it was not admissible under rule 403, which I think is perhaps the better application of the rules of evidence. Are you not interested in protecting the judge's use of that or not? I do believe that the district court conducted essentially a 403 analysis. I read the record, so what's in the briefing and so forth, and he certainly did. But go ahead. The judge properly found in this case that confusion of the issues, and I believe the essential risk of many trials of unrelated defendants, were considerations in this case. I would note, however, He was saying, in essence, this projection argument is probably frivolous or something like that? He did say, with respect to the projection argument, and I can cite his order, he found that the assaults by the others were not contemporaneous to the assaults Hawkost allegedly committed. That's his order at page 14. He also said that the court is not persuaded that any similarity between the allegations or the timing of AW's disclosures without more is strong evidence that AW conflated, merged, or confused the abuse. She allegedly suffered or fabricated the charges against Hawkost. And again, that's his order at 14. He considered the probative value of this evidence and couldn't find support for it, and that didn't change at trial. And that's the rule 403 under those circumstances prohibits admission of it, right? That is a consideration that I believe goes to both 412 and 403. 412 says that these limitations are appropriate as long as the restriction is not in it. The low probative value of it, minimal if any, goes to whether or not the restriction and limitation is appropriate. There are also very similar considerations under rule 403, but I believe the constitutional protection is really what 412 is concerned with in terms of permitting an exception, and I don't think it applied here. Well, yeah, a due process is involved in what's admissible under the rules of evidence. So there's a constitutional underpinning to those rules as well. Correct, Your Honor. Yes, and I believe that the district court did go through the analysis on both levels, addressing the confrontation clause argument with respect to the 412B1C exception and why it didn't apply, but also balancing the 403 factors and considering the possibility of confusion, many trials of unrelated defendants, and again, of course, the big 412 consideration, which is protection of the privacy of a 12- and 13-year-old victim at the time, not having to reveal very personal details of another assault. Well, 412 is a rule that even if she'd been 20 years old, I mean, the age of the victim doesn't bring 412 into play any more than any other rule, right? That's correct, Your Honor. 412 applies to all victims equally. The judge did say in his order, I find no reason, and again, I'm paraphrasing, but not to extend that application to what, in this case, is a minor victim. But that's correct. Any victim who suffers this type of abuse should still have those same protections of Rule 412. But in this case, the judge properly found that Rule 412 and considered the 403 factors, but Rule 412 prohibited the admission of the unrelated, and again, unrelated is key here, sexual assaults by Sheridan. And the district court properly excluded the evidence here. And for all the reasons set forth in the government's brief, the defendant's conviction sentence should be affirmed. Thank you. Thank you, Ms. Eldridge. Mr. Hanson, your rebuttal. Thank you. Let me address a red herring by the government saying that the question in the second interview about other aspects of abuse isn't in the record. There's a painstaking offer of proof somewhere between pages 76 and 80, where I said what that question was and what I believe the answer would be. There's also a written offer of proof, which is the third CAC interview about the Sheridan disclosures and her interview with the FBI. So the record is clear as to the last two questions in that second CAC interview in November of 2016 was. The record is clear. It's not outside the record at all. Judge Beam, to just address your concern on the 403 analysis. This is not unduly prejudicial, unfairly prejudicial, meant to mislead the jury. This is an alternative theory of defense. When the government says this is a delayed disclosure case, a typical delayed disclosure case, I, at that point, needed the ability to argue it's not delayed disclosure. It's projection. It's a cover-up. It's something other than what the government advanced. And for those reasons, judges, I ask you to reverse and remand for a new trial, all three counts of conviction. Thank you, Mr. Hanson. Appreciate the presence of counsel this morning and the argument you.